IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JASON PULLAR, et al.,

    Plaintiffs,

      v.

GENERAL MD GROUP, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-4063-TWT

## OPINION AND ORDER

This is an action for breach of contract and fraud. It is before the Court on the Defendant David Weinstein's Motion to Dismiss [Doc. 18] and the Defendant Corine Weinstein's Motion to Dismiss [Doc. 19]. For the reasons set forth below, the Court GRANTS in part and DENIES in part the Defendant David Weinstein's Motion to Dismiss [Doc. 18] and GRANTS in part and DENIES in part the Defendant Corine Weinstein's Motion to Dismiss [Doc. 19].

## I. Background

The General MD Group was in the business of performing services for medical offices. (David Weinstein's Br. in Supp. of his Mot. to Dismiss, at 3.) Specifically, General MD would enter into contracts with medical offices where it agreed to, among other things, transcribe medical records, perform insurance billing services, and

provide billing collection services. Id. Around January of 2012, General MD, through its representatives and agents, began seeking investors interested in purchasing a portion of these medical accounts. (Am. Compl. ¶ 17.) The Plaintiffs Jason Pullar and Anthony Campagna were among those contacted.

Pullar was contacted by John Richwine, who held himself out to be a broker for General MD owner David Weinstein. (Am. Compl. ¶ 21.) Richwine informed Pullar of the investment opportunity with General MD, and provided Pullar with financial projections. (Am. Compl. ¶¶ 21-22.) For months, Pullar was contacted by Richwine, David Weinstein and Corine Weinstein. (Am. Compl. ¶ 23.) All three sought to explain and promote the investment opportunity. (Am. Compl. ¶ 23.) In May of 2012, Dustin Simon contacted Pullar and informed him that Simon was the new owner of General MD. (Am. Compl. ¶ 25.)  Following this, on June 15, 2012, Pullar and General MD entered into an agreement ("Pullar Agreement"). (Am. Compl. ¶ 26, Ex. C.) Under this agreement, Simon was to give Pullar certain billing, collection, and answering service accounts ("Accounts") in exchange for $125,000.00. (Am. Compl. ¶ 26.) This amount was to be paid in two installments, with $75,000.00 due at execution and $50,000.00 due following the delivery of the Accounts. (Am. Compl. ¶ 26.) Certain representations were made within the Pullar Agreement:

> 1. Corporate Status: [General MD Group] has been duly created, validly exists, and is in good standing.

2. Title to Assets: [Defendants] hold[] valid and marketable legal and beneficial title to the Assets and the Modules, which are free and clear of all liens, claims, encumbrances and security interests.

3. Litigation: There is no action, suit, proceedings or pending actions.

4. Seller has the right and power to transfer clients to Buyer as contemplated herein. Seller's contracts with Clients permit the assignment of those contracts to Buyer.

(Am. Compl. Ex. C.) Relying on these representations, Pullar made the initial payment of $75,000.00. (Am. Compl. ¶ 36.) Pullar wrote the check out to "General MD Group" and sent it to Simon. (Am. Compl. ¶ 36.) No Accounts were delivered to Pullar. (Am. Compl. ¶ 39.) Around October 2012, Simon notified Pullar that Simon was discontinuing his efforts to procure any Accounts. (Am. Compl. ¶ 40.)

Campagna's story is nearly identical to Pullar's. The few differences are as follows. First, unlike with Pullar, the negotiations with Campagna finalized before Simon claimed to be the new owner of General MD. Campagna and General MD entered into an agreement ("Campagna Agreement") on April 3, 2012, and David Weinstein signed it on behalf of General MD as "Partner." (Am. Compl. ¶ 44.) Second, Campagna did receive Accounts, but they were "minimally or non-performing." (Am. Compl. ¶ 58.) Aside from these differences, the remaining allegations are similar to that of the Pullar Agreement. Leading up to the Campagna Agreement, David Weinstein and Corine Weinstein promoted the investment

opportunity to Campagna. (Am. Compl. ¶¶ 42-43.) The terms of the Campagna Agreement, including price and what Campagna would receive, were identical to that of the Pullar Agreement.[1] (Am. Compl. ¶¶ 44-48, Ex. E.) The representations within the Campagna Agreement were identical to those within the Pullar Agreement. (Am. Compl. ¶¶ 50, 52-54, Ex. E.) Campagna also paid the initial installment of $75,000.00. (Am. Compl. ¶ 55.) Finally, in May of 2012 Simon informed Campagna that he was the new owner of General MD. (Am. Compl. ¶ 57.) Around October of 2012, Simon then notified Campagna that Simon was discontinuing his efforts to procure any more Accounts and that no further Accounts would be delivered. (Am. Compl. ¶ 59.)

Pullar and Campagna brought suit alleging breach of contract, fraud, civil conspiracy, conversion, and violation of the Georgia RICO Act. [Doc. 1]. David Weinstein was among the listed Defendants. [Doc. 1].  Corine Weinstein was not. [Doc. 1]. Once litigation commenced, David Weinstein contacted Pullar's employer, Craneware, Inc. (Am. Compl. ¶ 60.)  David Weinstein accused Pullar and Craneware of misappropriating David Weinstein's confidential and proprietary information. (Am. Compl. ¶ 60.) David Weinstein sent letters to Pullar, Campagna, and Craneware

---

[1]One difference, not relevant for the purposes of the Motions to Dismiss, was that the Pullar Agreement stipulated that Pullar would receive the Accounts within twelve months of the date of the contract, whereas the Campagna Agreement stipulated that Campagna would receive the Accounts "in the future." (Am. Compl. Exs. C, E.)

threatening suit for their alleged use of General MD Group's "confidential marketing systems, manuals, clearinghouses, and other proprietary systems and methods in excess of what had been agreed upon prior to [Defendant David Weinstein's] sale of the company." (Am. Compl. ¶ 61.)  It is also generally alleged that "David Weinstein is further attempting to sabotage Plaintiff Pullar's relationship with his employer in an attempt to force Plaintiff Pullar to drop this lawsuit and relinquish his rights against Defendant David Weinstein." (Am. Compl. ¶ 64.) Pullar and Campagna amended the Complaint to include claims of libel, slander, and tortious interference with a business relationship. [Doc. 6]. The Amended Complaint also added Corine Weinstein as a defendant. [Doc. 6].

## II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de

<u>Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.</u>, 711 F.2d 989, 994-95 (11th Cir. 1983); <u>see also</u> <u>Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. <u>See</u> <u>Lombard's, Inc. v. Prince Mfg., Inc.</u>, 753 F.2d 974, 975 (11th Cir. 1985), <u>cert. denied</u>, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007).

In addressing the Motions to Dismiss, Pullar and Campagna repeatedly reference the quotation from <u>Conley v. Gibson</u>, 355 U.S. 41 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In <u>Twombly</u>, the Supreme Court recognized "that Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough. . . .and after puzzling the profession for 50 years, this famous observation has earned its retirement." <u>Twombly</u>, 550 U.S. at 562-63. "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard." <u>Id.</u> at 563. To survive a 12(b)(6) motion, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555. The

"[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> Thus, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" <u>Id.</u> at 558.

## III. <u>Discussion</u>

### A.   <u>Breach of Contract</u>

David Weinstein has moved to dismiss all claims brought against him except for Campagna's breach of contract claim.  Corine Weinstein has moved to dismiss all claims brought against her.   David Weinstein seeks dismissal of Pullar's breach of contract claim. Pullar does not dispute that David Weinstein never signed the Pullar Agreement. Pullar's argument is based on partnership liability. In a general partnership, "all partners are jointly and severally liable for all debts, obligations, and liabilities of the partnership." O.C.G.A. § 14-8-15(a). "[T]he partners, as to partnership debts, are joint contractors; and each is the agent of the other to a limited extent." <u>Southcom Group, Inc. v. Plath</u>, 257 Ga. App. 46, 48 (2002). "When suit is brought for a debt due by the partnership, the plaintiff may hold the individual partners liable by serving them." <u>Id.</u> In such an action, relief may be sought from the individual assets

of a general partner. See Co-op Mortgage Investments Associates v. Pendley, 134 Ga. App. 236, 239 (1975).

Here, Pullar sufficiently alleges a breach of contract claim against David Weinstein. Pullar alleges that General MD is a partnership, and that David Weinstein was a partner when the Pullar Agreement was executed by General MD. In response, David Weinstein argues that Pullar admitted in the Amended Complaint that David Weinstein was not affiliated with General MD when the Pullar Agreement was executed. (David Weinstein's Br. in Supp. of his Mot. to Dismiss, at 11.) This is incorrect. Pullar alleges that he was *told* that David Weinstein was no longer affiliated with General MD. (Am. Compl. ¶ 25.) The Amended Complaint expressly states: "'General MD Group' is a partnership exclusively owned by Defendant Simon, Defendant David Weinstein and/or companies owned and operated by each of them." (Am. Compl. ¶ 15.) David Weinstein further argues, citing O.C.G.A. § 9-2-20, that because he did not sign the Pullar Agreement he is not liable for a breach. (David Weinstein's Br. in Supp. of his Mot. to Dismiss, at 12.) Under O.C.G.A. § 9-2-20, an action on contract may only be brought "against the party who made [the contract] in person or *by agent*." As stated, in a partnership the general partners act as agents of each other. If Pullar's allegations are correct, and the Court must assume they are, David Weinstein entered the Pullar Agreement through his agent, the co-partner of

General MD that signed the Pullar Agreement. The Court does not inquire into the likelihood of a claim's success at this stage, and so the Plaintiff Pullar's breach of contract claim against David Weinstein survives dismissal. No argument is made by either Pullar or Campagna for how  Corine Weinstein is a party to or liable for the Pullar or the Campagna Agreements. The breach of contract claims by the Plaintiffs Pullar and Campagna against Corine Weinstein should be dismissed.

      B.    <u>Fraud</u>

"The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." <u>Stiefel v. Schick</u>, 260 Ga. 638, 639 (1990). There is a heightened pleading standard: "[i]n alleging  fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. " FED. R. CIV. P. 9(b). To satisfy this standard, a plaintiff alleging fraud must state "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." <u>Ziemba v. Cascade Int'l, Inc.</u>, 256 F.3d 1194, 1202 (11th Cir. 2001).

The fraud allegations of Pullar and Campagna against both David Weinstein and Corine Weinstein are identical. First, Pullar and Campagna allege misrepresentations within the promotional efforts of David Weinstein and Corine Weinstein:

> In connection with their advertisement and promotion of the Accounts, Defendants made certain representations regarding the value of the Accounts and, specifically, the monies [Plaintiffs] would collect from such accounts should [they] purchase them.

(Am. Compl. ¶¶ 78, 87.) This does not satisfy the heightened pleading standard. Pullar and Campagna do not specify the particular fraudulent statements made, who made them, and through which medium they were made. They also do not specify the time and place of the alleged misrepresentations.

Second, Pullar and Campagna also allege misrepresentations within the Pullar and Campagna Agreements:

> In the [Pullar and Campagna Agreements], Defendants further represented that "General MD Group was duly created, validly, and in good standing."

> In the [Pullar and Campagna Agreements], Defendants further represented that Defendants owned "valid and marketable title to the [Accounts], which are free and clear of all liens, claims, encumbrances and security interests."

(Am. Compl. ¶¶ 79-80, 88-89.)   These allegations do satisfy the heightened pleading standard. The specific statements are identified, and the attached exhibits reveal the

time and location of the representations. Furthermore, David Weinstein may be liable for these representations. Pullar alleges that David Weinstein is a partner of General MD, and is thus liable for fraudulent misrepresentations found in the Pullar Agreement.[2] (Am. Compl. ¶ 15.) Further, David Weinstein personally executed the Campagna Agreement, and is thus liable for the representations therein. The fraud claims of the Plaintiffs Pullar and Campagna against David Weinstein survive dismissal. However, the only alleged fraudulent misrepresentations by Corine Weinstein concern statements in her promotional efforts. As noted, those misrepresentations were not plead with sufficient particularity. Furthermore, Corine Weinstein was not a party to or liable for either the Pullar or the Campagna Agreements. Consequently, the fraud claims of the Plaintiffs Pullar and Campagna against Corine Weinstein should be dismissed.

C.      Civil Conspiracy

---

[2]"Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person . . . the partnership is liable therefor to the same extent as the partner so acting or omitting to act." O.C.G.A. § 14-8-13. This has been interpreted to mean that "[e]ach *party* to a joint venture or enterprise is jointly and severally liable for the tortious acts of the other committed within the scope of the venture or enterprise." DeKalb County v. Lenowitz, 218 Ga. App. 884, 887 (1995) (emphasis added).

"To recover damages based on a civil conspiracy, a plaintiff must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. . . . [t]he conspiracy of itself furnishes no cause of action." McIntee v. Deramus, 313 Ga. App. 653, 656 (2012) (internal quotation marks omitted). "The gist of the action . . . is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage." Id. "Absent the underlying tort, there can be no liability for civil conspiracy." Jenkins v. Wachovia Bank, Nat'l Ass'n, 309 Ga. App. 562, 567 (2011). "[M]embers of the conspiracy are jointly and severally liable for acts of co-conspirators done in furtherance of the conspiracy." McIntee, 313 Ga. App. at 656.

Here, both Pullar and Campagna have adequately alleged theories of civil conspiracy against David Weinstein and Corine Weinstein. Pullar and Campagna allege that David Weinstein and Corine Weinstein were part of a scheme to defraud investors through the sale of medical accounts. (Am. Compl. ¶ 96.) For support, they reference the efforts made by David Weinstein and Corine Weinstein to promote the investment opportunity. (Am. Compl. ¶¶ 23, 43.) They further argue that the alleged torts committed by other Defendants in this action were committed pursuant to and in furtherance of that conspiracy. (Am. Compl. ¶¶ 96-97.)

David Weinstein and Corine Weinstein argue that unless they committed the underlying torts, they may not be liable for civil conspiracy. (David Weinstein's Br. in Supp. of his Mot. to Dismiss, at 21-22; Corine Weinstein's Br. in Supp. of her Mot. to Dismiss, at 11.) While they are correct that there must be an underlying tort, they are incorrect when they posit that *they* must have committed the underlying tort in order to be liable for civil conspiracy. The conspiracy claim is an avenue by which they may be liable for the torts of their alleged co-conspirators. It makes no difference that they personally did not commit the torts. For example, in <u>Argentum Int'l, LLC v. Woods</u>, 280 Ga. App. 440, 444 (2006), the defendants Flick and Miller were charged with fraud and conspiracy. Flick represented to the plaintiffs that the corporation they were being asked to invest in owned a valuable patent. <u>Id.</u> However, Flick and Miller were planning on transferring that patent to another corporation. <u>Id.</u> The only misrepresentations alleged were those Flick made when he tried to secure the investors. Miller made no representations to the plaintiffs. <u>Id.</u> However, the court found that it was sufficient that Miller was part of the conspiracy that motivated Flick to defraud the plaintiffs. <u>Id.</u> at 444-45.

Additionally, David Weinstein and Corine Weinstein also argue that this case is similar to <u>Twombly</u> in that the Plaintiffs have only alleged independent and parallel conduct, which is insufficient to plead conspiracy. (David Weinstein's Br. in Supp. of

his Mot. to Dismiss, at 22; Corine Weinstein's Br. in Supp. of her Mot. to Dismiss, at 11-12.) This case is distinguishable. In <u>Twombly</u>, the Supreme Court stated that the conduct of the businesses in resisting competition was likely to occur with or without collusion. <u>See</u> <u>Twombly</u>, 550 U.S. at 566 ("[R]esisting competition is routine market conduct, and even if the ILECs flouted the 1996 Act in all the ways the plaintiffs allege . . . there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway."). Thus, alleging that the businesses were doing what they would have been doing anyways, without more, did not support a plausible claim that they were working together. Here, unlike in <u>Twombly</u>, Pullar and Campagna provide additional reasons for suspecting collusion among the Defendants. David Weinstein, Corine Weinstein, Simon, and Richwine were all promoting investment opportunities on behalf of General MD. This is not independent conduct. This is conduct by multiple parties targeting the same investors to get them to sign the same specific contracts, namely, the Pullar and Campagna Agreements. The question of whether they were working together *in order to* knowingly commit fraud, or some other tort, is a separate issue. At this stage, it is sufficient that the allegations give rise to a plausible argument of conspiracy. However, civil conspiracy is not an independent claim under Georgia law. It is a theory for imposing liability on one who did not actually commit the underlying tort. Thus, an underlying tort and its

relationship to the conspiracy must both be established in order for Pullar and Campagna to recover under this theory.

D.   Georgia RICO

Under the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act, "[i]t is unlawful for any person, through a pattern of racketeering activity . . . to acquire or maintain . . . any interest in or control of any . . . personal property of any nature, including money." O.C.G.A. § 16-14-4(a). Additionally, conspiring to violate the aforementioned provision is unlawful. O.C.G.A. § 16-14-4(c). "'Racketeering activity' means to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment under" certain enumerated laws including those under "Article 1 of Chapter 8 . . . relating to theft." O.C.G.A. § 16-14-3(9)(A). A "pattern" of racketeering activity means "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided . . . that the last of such acts occurred within four years . . . after the commission of a prior act of racketeering activity." O.C.G.A. § 16-14-3(8)(A). Thus, "to state a claim under the civil RICO statute, a claimant must allege at least two predicate acts of conduct that are crimes

chargeable by indictment under certain laws of the state of Georgia or the United States." <u>Dalton v. State Farm Fire and Cas. Co.</u>, No. 1:12-CV-02848-RWS, 2013 WL 1213270, at * 3 (N.D. Ga. Mar. 22, 2013). Additionally, RICO claims "are essentially a certain breed of fraud claims, [and] must be pled with an increased level of specificity." <u>Ambrosia Coal & Constr. Co. v. Morales</u>, 482 F.3d 1309, 1316 (11th Cir. 2007). A plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." <u>Id.</u> at 1316-17.

Here, Pullar and Campagna have alleged two predicate acts committed by David Weinstein in furtherance of a scheme to defraud investors. Specifically, they have each alleged theft by deception.[3] (Am. Compl. ¶ 105.) This is a predicate act for a Georgia RICO claim. O.C.G.A. § 16-14-3(9)(A)(ix). Additionally, to sustain a claim under RICO each plaintiff need only assert that at least one of the predicate acts directly harmed him. <u>See</u> <u>Smith v. Morris, Manning & Martin, LLP</u>, 293 Ga. App. 153, 165 (2008) ("A private RICO plaintiff must show a direct nexus between at least one of the predicate acts listed under the RICO Act and the injury it purportedly

---

[3]Presumably, Pullar and Campagna are referring to the alleged fraud concerning their respective Agreements. The description of these representations satisfies the particularity requirement for the Georgia RICO claims as well.

sustained."). Moreover, Pullar and Campagna have alleged that Corine Weinstein conspired to commit two predicate acts sufficient to sustain a Georgia RICO claim. Specifically, they have alleged that Corine Weinstein conspired to commit theft by deception against Pullar and Campagna. (Am. Compl. ¶¶ 96, 104-05.) Thus, Pullar and Campagna have sufficiently alleged Georgia RICO claims against David Weinstein and Corine Weinstein.

      E.    <u>Conversion</u>

Under Georgia law, "[a]ny distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion." <u>Decatur Auto Ctr. v. Wachovia Bank, N.A.</u>, 276 Ga. 817, 819 (2003). "'[G]enerally, money is not subject to a civil action for conversion' because it is not tangible personalty or specific intangible property." <u>Master Mind Music, Inc. v. Block Enters., LLC</u>, No. 1:12-cv-162-RWS, 2012 WL 6625754, at *6 (N.D. Ga. Dec. 18, 2012) (quoting <u>Taylor v. Powertel, Inc.</u>, 250 Ga. App. 356, 359 (2001)). However, if the money comprises a "specific and identifiable fund," a claim for conversion may be sustained. <u>See</u> <u>Rowland v. Rowland</u>, No. 1:04-cv-2068-TWT, 2005 WL 3096169, at *2 (N.D. Ga. Nov. 18, 2005) (citing <u>Decatur Auto Ctr.</u>, 276 Ga. at 819-20). "Examples of specific funds or money that may be the subject of a conversion claim include: insurance premiums earmarked for remittance to the insured, certain bills or coins to

which plaintiff had title, a particular class of bills (where the denominations of each class are given and the number of bills in each denomination), or a specific check or negotiable instrument." Master Mind Music, 2012 WL 6625754, at *6. In other words, a party is "no longer required to identify specific bills and coins." Decatur Auto Ctr., 276 Ga. at 821.

Here, Pullar and Campagna only specify a sum of money.  Although  the Georgia Supreme Court in Decatur Auto relaxed the standard for conversion claims relating to money, it never suggested that merely identifying an amount would be enough. Its rationale for permitting conversion claims for checks was that they were specific instruments with which intangible rights may be identified. Id. at 821 ("[W]e hold that Decatur Auto was not required to establish the existence of specific dollars or coins in order to recover for the conversion of its specific check . . . and the full value of the intangible rights identified with that check."). The same is true for money held within a specific bank account. Id. ("Conversion is also available for specific amounts of money placed on deposit with a bank."). Pullar and Campagna respond by arguing that because money may sometimes be the subject of a conversion claim, their claim is plausible. (Pls.' Resp. to David Weinstein's Mot. to Dismiss, at 8.) However, the facts alleged, if true, would not place their claims into any exception for when a conversion claim may lie for money. Consequently, their conversion claims are not

plausible claims for relief. The conversion claims of the Plaintiffs Pullar and Campagna against David Weinstein and Corine Weinstein should be dismissed.

      F.    <u>Slander and Libel</u>

Under Georgia law, "[a] libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1(a). "The publication of the libelous matter is essential to recovery." O.C.G.A. § 51-5-1(b). "A libel is published as soon as it is communicated to any person other than the party libeled." O.C.G.A. § 51-5-3.

The only factual allegations concerning libel relate to Pullar and David Weinstein. Pullar's libel allegations read, in their entirety: "In or around December 2012, Defendant David Weinstein sent Craneware written correspondence that contained *false and malicious statements* about Plaintiff Pullar that *tended to injure* Plaintiff Pullar's reputation and *exposed him to public hatred, contempt, and/or ridicule.*" (Am. Compl. ¶ 121) (emphasis added). While Pullar need not state with particularity the nature of the statements, he must do more than just recite the elements of libel as defined by Georgia law. This is precisely the "formulaic recitation of the elements of a cause of action" held insufficient to survive a Rule 12(b)(6) motion. <u>See</u> <u>Twombly</u>, 550 U.S. at 555 ("[A] plaintiff's obligation . . . requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). The Plaintiff Pullar's libel claim against David Weinstein should be dismissed. As there are no other factual allegations relating to the libel claim, the Plaintiff Campagna's libel claim against David Weinstein should be dismissed. The libel claims of the Plaintiffs Pullar and Campagna against Corine Weinstein should also be dismissed.

Pullar also raises a slander claim against David Weinstein. Under Georgia law, "[s]lander or oral defamation consists in: (1) Imputing to another a crime punishable by law; . . . or (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein." O.C.G.A. § 51-5-4. "[I]t has long been the law that publication of the defamatory remark is indispensable to recovery for slander." Fink v. Dodd, 286 Ga. App. 363, 367 (2007). "Generally, publication occurs when the slander is communicated to anyone other than the person slandered." Id. A theft accusation can give rise to a possible slander claim. See Melton v. Bow, 241 Ga. 629, 630-31 (1978) ("To impute the crime of theft to a person is actionable per se without proof of special damages.").

Here, Pullar alleges that David Weinstein told Craneware employees that Pullar had committed theft. Specifically, Pullar claims that David Weinstein had contacted Craneware and accused Pullar of "misappropriat[ing] Defendant David Weinstein's

confidential and proprietary information." (Am. Compl. ¶ 60.)  Pullar has sufficiently plead slander against David Weinstein. See Banco Surinvest, S.A. v. SunTrust Bank, Atlanta, 78 F. Supp. 2d 1366, 1370 (N.D. Ga. 1999) ("Some courts have adopted a stringent approach and required defamatory remarks to be stated verbatim in the complaint, but in the Eleventh Circuit the test remains whether the allegation gives the defendant fair notice of the plaintiff's claim and the ground upon which its rests."). As there are no other factual allegations relating to slander, the Plaintiff Campagna's slander claim against David Weinstein should be dismissed. The slander claims of the Plaintiffs Pullar and Campagna against Corine Weinstein should be dismissed.

G.    Tortious Interference With a Business Relationship

The only factual allegation relating to this claim is that David Weinstein tortiously interfered with Pullar's business relationship with Craneware. To establish a claim for tortious interference with a business relationship, the plaintiff must prove that the defendant (1) acted improperly and without privilege, (2) acted purposely and maliciously with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) caused the plaintiff financial injury. See State Bank of Tex. v. Patel, 453 Fed. Appx. 857, 860 (11th Cir. 2011) (citing Camp v. Eichelkraut, 246 Ga. App. 275, 278 (2000)). Inducement is an essential element. See Camp, 246 Ga. App. at 279 ("An essential element of tortious

interference with business relations is that the alleged tortfeasor used wrongful means to induce a third party or parties not to enter into or continue a business relationship with the plaintiff.").

Here, there is no allegation that Craneware discontinued its business relationship with Pullar. Consequently, the complaint also lacks a specific allegation of financial injury. Pullar only alleges that David Weinstein "tortiously interfered with such relations" and that Pullar "has been damaged as a direct and proximate result." Once more, this is a "formulaic recitation of the elements of a cause of action" held insufficient to survive a Rule 12(b)(6) motion. See Twombly, 550 U.S. at 555. After quoting Conley's "no set of facts" language, Pullar alleges that he "need only be capable of introducing evidence within the framework of the [claim] sufficient to warrant a grant of the relief sought." (Pls.' Resp. to David Weinstein's Mot. to Dismiss, at 9.) As noted, this argument was rejected in Twombly. The Plaintiff Pullar's claim for tortious interference of a business relationship against David Weinstein should be dismissed. As there are no factual allegations concerning Campagna relating to this claim, the Plaintiff Campagna's claim for tortious interference of a business relationship against David Weinstein should be dismissed. Neither Pullar nor Campagna alleges any facts suggesting Corine Weinstein tortiously interfered with

any of their business relationships. The tortious interference claims of the Plaintiffs Pullar and Campagna against Corine Weinstein should be dismissed.

> H.     Attorney's Fees and Punitive Damages

Under Georgia law, attorney's fees are recoverable when the "defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. "'Bad faith' is bad faith connected with the transaction and dealings out of which the cause of action arose, rather than bad faith in defending or resisting the claim after the cause of action has already arisen." Lewis v. D. Hays Trucking, Inc., 701 F. Supp. 2d 1300, 1313 (N.D. Ga. 2010) (internal quotation marks omitted). "Bad faith requires more than 'bad judgment' or 'negligence,' rather the statute imports a 'dishonest purpose' or some 'moral obliquity' and implies 'conscious doing of wrong' and a 'breach of known duty through some motive of interest of ill will.'" Id. Here, attorney's fees are potentially recoverable against David Weinstein and Corine Weinstein. Pullar and Campagna have alleged bad faith in the commission of certain torts that survive dismissal. Specifically, Pullar and Campagna have alleged that David Weinstein acted in bad faith in committing fraud, conspiring to commit fraud, and slandering Pullar. Additionally, Pullar and Campagna have alleged that Corine Weinstein acted in bad faith in conspiring to commit fraud.

Furthermore, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). Here, the tort claims against David Weinstein and Corine Weinstein include allegations of willful misconduct. Pullar and Campagna may go forward with their claims for punitive damages.

## IV. <u>Conclusion</u>

For the reasons set forth above, the Court GRANTS in part and DENIES in part the Defendant David Weinstein's Motion to Dismiss [Doc. 18] and GRANTS in part and DENIES in part the Defendant Corine Weinstein's Motion to Dismiss [Doc. 19].

SO ORDERED, this 17 day of September, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge